IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RUBEN C. HOLTON,** | : | Civil No. 4:22-cv-487 |
| **Plaintiff,** | : | |
| v. | : | |
| **UNITED STATES OF AMERICA,** *et. al.*, | : | |
| **Defendants.** | : | Judge Sylvia H. Rambo |

## M E M O R A N D U M

Before the court is the government's partial objection (Doc. 29) to Magistrate Judge William I. Arbuckle's Report and Recommendation ("R&R") (Doc. 28) granting in part and denying in part the government's Motion to Dismiss (Doc. 17). For the reasons discussed below, the court will grant in part and deny in part the government's objection insofar as it will adopt the R&R's recommendations in full but will provide alternative reasoning with respect to the portion of the R&R objected to by the government.

### I.  STANDARD OF REVIEW

<u>Report and Recommendation</u>:

When objections are timely filed to a magistrate judge's Report and Recommendation, the district court must conduct a de novo review of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1); *Brown v. Astrue*,

1

649 F.3d 193, 195 (3d Cir. 2011). Although the standard is de novo, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)). For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; *see also Univac. Dental Co. v. Dentsply, Intern.*, 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (citations omitted). Regardless of whether objections are made, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); L.R. 72.31.

Federal Rules of Civil Procedure 12(b)(6):

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d

2

Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II. DISCUSSION[1]

As an initial matter, neither party objects to the bulk of the recommendations provided by the R&R, and the court itself is satisfied that there is no clear error on

---

[1] The court assumes the parties' familiarity with the factual and procedural background of this action given the R&R's thorough summary. (Doc. 28 pp. 1-10.)

3

the face of the record and will therefore adopt these portions of the R&R. The court will, however, evaluate the objected-to portion of the R&R de novo. The extent of the government's objection to the R&R is limited to one distinct issue – whether Holton's claim for ordinary negligence in his *pro se* FTCA complaint can survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Doc. 29.)

The government's position is that Holton's complaint merely states a claim for medical malpractice, or medical negligence, and does not include a claim for ordinary negligence. In rejecting this argument and declining to recommend dismissal of the ordinary negligence claim, the magistrate judge reasoned that the government did not raise this issue until its reply brief and, therefore, "Plaintiff did not have a meaningful opportunity to respond. In the absence of adequate briefing on the subject, Plaintiff's ordinary negligence and medical malpractice claims should both be permitted to proceed." (Doc. 28 pp. 19-20.)

By focusing on the government's purported waiver of this issue, the R&R fails to resolve the underlying question of whether the complaint adequately states a claim for ordinary negligence despite the fact that the government sought complete dismissal of the case. Nonetheless, the court is satisfied that the complaint adequately states a claim for ordinary negligence and will overrule the government's objection.

In Pennsylvania, the elements of ordinary and medical negligence claims substantially overlap, requiring the plaintiff to show "(1) a duty of care owed by the physician to the patient; (2) a breach of that duty; (3) the breach of that duty was the proximate cause of the harm suffered by the patient; and (4) the damages suffered were a direct result of that harm." *Ortiz v. United States*, No. 1:23-cv-00203, 2024 WL 1620790, at *19 (M.D. Pa. Apr. 15, 2024) (citing *Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019)). To establish a medical negligence claim, however, the plaintiff must also show that their treatment "fell below the appropriate standard of care – that is, varied from accepted medical practice." *Mitchell*, 209 A. 3d at 314-15.

Due to their similarities, the line between ordinary and medical negligence claims can, at times, be fuzzy, but a court may distinguish them by resolving two fundamental questions:

> (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions.

*Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 322 (Pa. Super. Ct. 2007) (quoting *Grossman v. Barke*, 2005 PA Super 45, ¶ 17, 868 A.2d 561, 570 (2005)). "In sum, a complaint sounds in malpractice where the conduct at issue constituted an integral part of the process of rendering medical treatment." *Millhouse v. United States*, No.

1:19-CV-00665, 2021 WL 2412930, at *9 (M.D. Pa. June 14, 2021) (internal quotation marks and citations omitted).

As relevant here, "courts within the Third Circuit, in limited circumstances, have recognized that certain acts or omissions by prison medical staff can constitute a breach of an ordinary negligence duty." *Grundowski v. United States*, No. 3:07-cv-2207, 2012 WL 1721781, at *6 (M.D. Pa. May 16, 2012); *see, e.g.*, *Jones v. United States*, 91 F. 3d 623, 625 (3d Cir. 1996.) (denial of inmate's prescribed medication can be classified as a breach of ordinary negligence duty because such a decision does not involve an issue of medical judgment); *Hill v. Lamanna*, No. 03-cv-323, 2006 WL 2433773, at *9 (W.D. Pa. Aug. 18, 2006) (denial of access to medical treatment after Plaintiff "repeatedly informed prison staff about . . . problems" constitutes breach of ordinary negligence duty); *Medley v. United States*, No. 1:15-cv-1261, 2016 WL 3913575, at *7 (M.D. Pa. Apr. 6, 2016), *report and recommendation adopted*, No. 1:15-cv-01261, 2016 WL 3908400 (M.D. Pa. July 19, 2016) (Failure to properly screen and place inmates with infections disease sounds in ordinary negligence because the allegations "do not necessarily arise out of actions that occurred between [the plaintiff] and prison medical providers in their professional relationship, and this conduct was not an integral part of rendering medical treatment to the [the plaintiff].").

Here, as summarized in the R&R, the complaint not only asserts distinct claims for both ordinary and medical negligence (*see* Doc. 1, pp. 4-5) but also avers that, while incarcerated, the prison's medical staff repeatedly denied Plaintiff necessary access to medical care when he presented with serious symptoms. For example, as to one medical provider, Nurse Mary Spiese, Plaintiff alleges as follows:

> "[Nurse Spiese] neglected to examine me for knee & back pain, however she falsely generated a "Clinical Encounter" for 11/16/20, when she didn't [see me]. . . On 11-23-20, Mary Spiese left me lying on the floor by the entrance in the Admin. Bldg., watching me crying & writhing on the floor in pain & walked right by me doing nothing. . . On 2-22-21 M. Spiese neglected to evaluate me & even mocked me when I was having & complaining of severe chest pain & difficulty breathing & other Covid 19 symptoms. On 6-24-21 M. Spiese neglected to examine me, or to provide care when complaining of my left side hurting, breathing issues, left eye pain etc.
>
> . . . .
>
> On 9-30-21, M. Spiese took my vitals, but refused to examine me, even though Counselor C. Dewald referred me because of her persistent neglection of my medical issues that are becoming worser & interrupting my daily activities & limiting them drastically.
>
> **So I Ask The Court, Are These Health Issues Listed Below An Exaggeration**
>
> 10-6-21 Ultrasound discovered, "Moderate Right Inguinal Hernia";
> 10-7-21 X-Ray revealed "Moderate Fecal Burden In the Colon";
> 2-8-22 Cat Scan revealed "Mild linear at electasis" versues "Parenchymal Scarring" in the left lover lobe of lung; "Small Bilateral Pleural Effusions"; "Minimal Bibasilar Atelectasis"; "Small Calcified Granulomo"; " Mild Calcified Atherosclerosis"; "Small Fat-Containing Umbilical Hernia"; "Mild Cardio-megaly".
>                                    . . . .

7

>Nurse Practitioner Neglected Me when complaining of symptoms that are compatible with these "Serious Health Issues." Seriously delaying prognosis and treatment that may be too late due to M. Spiese's Neglect.

(*Id.* at p. 4; Doc 1-1 p. 2.)

Even viewing the alleged failure of Nurse Spiese and other medical providers at the prison to treat Plaintiff as occurring in the context of a professional relationship, the decision to taunt, ignore, falsify records, and refuse to render aid cannot possibly be cognized as a medical judgment that must be redressed solely through a medical negligence claim. Instead, the complaint adequately alleges a breach of the ordinary duty of care. The court thus liberally construes Holton's *pro se* complaint as properly including a claim for ordinary negligence that comports with the pleading standards at the motion to dismiss stage.

### III.    CONCLUSION

For the foregoing reasons, the court will substantially overrule the government's objection, and adopt the R&R in all respects except the reasoning applied in denying the government's motion to dismiss the ordinary negligence claim.

/s/*Sylvia H. Rambo*
Sylvia H. Rambo
United States District Judge

Dated: May 9th, 2024