# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUBEN CONJI HOLTON, | CIVIL NO. 4:22-CV-00487 |
| Plaintiff, | (NEARY, J.) |
| v. | (LATELLA, M.J.) |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## MEMORANDUM

Before the Court is a discovery dispute. Plaintiff seeks the disciplinary history and performance reviews for three individuals involved in his claims; daily logs and medical logs; and documents related to another relevant individual's separation from employment. (Doc. 38). For the reasons set forth herein, Plaintiff's request to compel Defendant to produce these documents will be granted in part and denied in part.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed a Complaint on March 31, 2022 against Defendants United States of America, the Federal Bureau of Prisons, and three individually named defendants asserting claims of negligence, negligent

1

hiring, intentional infliction of emotional distress, medical negligence, "tortious conduct," and "emotional harm." (Doc. 1). On February 17, 2023, Defendants filed a Motion to Dismiss. (Doc. 17). Magistrate Judge William I. Arbuckle issued a Report and Recommendation on March 22, 2024, recommending that all claims against the individually named defendants be dismissed; that Plaintiff's intentional infliction of emotional distress, negligent supervision, and negligent hiring claims be dismissed; and that Plaintiff's negligence and medical malpractice claims be permitted to proceed. (Doc. 28 at 24). The United States filed objections to the portion of the Report and Recommendation allowing Plaintiff's ordinary negligence claim to advance. (Doc. 29). On May 9, 2024, United States District Judge Sylvia H. Rambo adopted Magistrate Judge Arbuckle's in all regards except as to the reasoning in denying the United States' Motion to Dismiss Plaintiff's claim for ordinary negligence, determining instead that Plaintiff stated a cognizable claim for ordinary negligence based upon allegations that medical providers taunted Plaintiff, ignored him, falsified medical records, and refused to render aid. (Docs. 33; 34 at 32). The United

States filed an Answer with Affirmative Defenses on June 4, 2024.

(Doc. 36).

On August 26, 2024, Plaintiff filed a letter to the docket

requesting a telephone conference regarding a discovery issue. (Doc.

38).

Magistrate Judge Arbuckle conducted a telephonic discovery

conference on September 26, 2024. (Doc. 40). Following the conference,

Judge Arbuckle issued an Order directing Defendant to provide the

following documents to Chambers for *in camera* review on or before

October 28, 2024:

> (a) In partial response to Plaintiff's Request for
> Production of Documents #4 - All documents
> regarding disciplinary history for former
> defendants Brosious, Mace-Liebson and Spiese
> for the ten-year period from March 31, 2012,
> to March 31, 2022;
>
> (b) In partial response to Plaintiff's Request for
> Production of Documents #4 - All performance
> evaluations for former Defendants Brosious,
> Mace-Liebson and Spiese for the five-year
> period from March 31, 2017, to March 31,
> 2022;
>
> (c) In response to Plaintiff's Request for
> Production of Documents #5 - Copies of the
> Daily Logs for the [Special Housing Unit]
> SHU where Holton was held for the day shift

only on the following dates: March 3, 4, 7, 13,
14, & 15;

(d) Any documents pertaining to the cause of
former Defendant Spiese' separation from
employment at F.C.I. Schuylkill.

(Doc. 41 at 1). Magistrate Judge Arbuckle indicated that "following *in
camera* review, the Defendant will be given an opportunity to formally
object before any documents deemed relevant by the Court are disclosed
to Plaintiff." (*Id.* at 2). He further directed Plaintiff to provide to
counsel for the United States "a detailed signed written response to the
Seven Requests for Production of Documents on or before October 28,
2024." (*Id.*).

Defendant filed a letter to the docket on October 17, 2024, in
conjunction with its submission of documents for *in camera* review,
explaining its efforts to comply and the contents of its production. (Doc.
42). Specifically, Defendant indicated that regarding Plaintiff's
"Request No. 4," the BOP conducted a search of Human Resource
records and determined that no disciplinary files exist for Bret
Brosious, Dr. Ellen Mace-Liebson, or for Nurse Spiese. (Doc. 42 at 2).
Additionally, Defendant asserted that the BOP does not have complete
performance evaluation records for the employees for the time-period

4

described in the Court's Order.  (*Id*.).  However, Defendant indicated

that it "secured what was still in the agency's possession and gathered

additional responsive materials from the relevant individuals."  (*Id*.).

Defendant indicated that it produced for the Court's inspection

performance evaluations for Brosious from 2016 through 2023; for

Mace-Liebson from 2016 through 2022; and for Spiese from 2020

through 2021.  (*Id*.).

Defendant indicated, with respect to Plaintiff's "Request No. 5,"

that Holton was housed in a general housing unit from March 26, 2018

through September 22, 2022, not in the SHU.  (*Id*.).  Specifically, Holton

was in general population housing on March 3, 4, 7, 13, 14 & 15 of 2021.

(*Id*.).  Defendant asserts that there are "no rounds logs for general

population housing units."  (*Id*.).  With respect to Plaintiff's "Request

No. 8," Defendant produced documents relating to Nurse Spiese's

resignation.  (*Id*.).

Because the undersigned magistrate judge did not have the

benefit of hearing the parties' respective arguments as to why each

category of documents should or should not be produced, we ordered the

parties to submit letter briefs on or before September 4, 2025.  Each

5

party submitted letters outlining their respective positions on the issue in compliance with that order.  (Docs. 58 and 59).  The matter is ripe for review.

## II.    LEGAL STANDARD

Federal courts have broad discretion to determine the scope of discovery and to manage the discovery process.  *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987) ("The conduct of discovery is a matter for the discretion of the district court and its decisions will be disturbed only upon a showing of an abuse of this discretion.").  Decisions regarding the proper scope of discovery are considered non-dispositive.  *Riley v. Clark*, No. 4:20-cv-325, 2023 WL 6129507, at *2 (M.D. Pa. Sept. 19, 2023).  In the Third Circuit, "it is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999).

Federal Rule of Civil Procedure 37 governs motions to compel discovery, and "[t]he scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rule of Civil Procedure."  *Brewer v. Berks Cty. Sheriff*, No. 13-5763, 2015 WL 13620425, at *2 (E.D. Pa. Oct. 5, 2015) (quoting *Breslin v. Dickinson*

*Twp.*, No. 09-1396, 2011 WL 1577840 (M.D. Pa. Apr. 26, 2011)). Under

Rule 26, "[p]arties may obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense and proportional

to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C)

provides:

> On motion or on its own, the court must limit the
> frequency or extent of discovery otherwise
> allowed by these rules or by local rule if it
> determines that:
>
> > (i) the discovery sought is unreasonably
> > cumulative or duplicative, or can be obtained
> > from some other source that is more
> > convenient, less burdensome, or less expensive;
> > (ii) the party seeking discovery has had ample
> > opportunity to obtain the information by
> > discovery in the action; or
> > (iii) the burden or expense of the proposed
> > discovery outweighs its likely benefit,
> > considering the needs of the case, the amount
> > in controversy, the parties' resources, the
> > importance of the issues at stake in the action,
> > and the importance of the discovery in
> > resolving the issues.

Fed. R. Civ. P. 26(b)(1)(C); *see Mayo v. City of Scranton*, No. 3:10-CV-

935, 2012 WL 6050551, at *3 (M.D. Pa. Dec. 4, 2012).

When deciding a motion to compel, "[t]he moving party bears the

initial burden to prove that the requested discovery falls within the

scope of discovery as defined by Rule 26(b)(1)." *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019). "If the moving party meets this initial burden, the burden then shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1), or (ii) is not sufficiently relevant to justify the burden of producing the information." *Atkinson*, 414 F. Supp. 3d at 744 (citation omitted). Discovery is governed by Rule 26, which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

"Relevance in this context has been 'construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case.'" *United States ex rel. Bergman v. Abbott Labs.*, No. 09-4264, 2016 WL 4247429, at *2 (E.D. Pa. Aug. 11, 2016) (quoting *Oppenheimer*

*Funds v. Sanders*, 437 U.S. 340 (1978)).  The scope of discovery is broad, but it is not unlimited.  *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  Discovery should not serve as a fishing expedition. *See Upshaw v. Janssen Research & Development, LLC*, No. 11-7574, 2014 WL 1244047, at * 3 (E.D. Pa. Mar. 26, 2014); Fed. R. Civ. P. 26(b)(1).

Finally, "[i]t is an obvious truism that a court should not enter an order compelling a party to produce documents where the documents do not exist." *Wells v. JPC Equestrian, Inc.*, No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014).  It is clear, therefore, that the court cannot compel the production of things that do not exist.  Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation.  *See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, No. 08-5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); *Knauss v. Shannon*, No. 08-1698, 2009 WL 975251 (M.D. Pa. April 9, 2009); *Lawson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-CV-1266, 2019 WL 5622453, at *4 (M.D. Pa. Oct. 31, 2019).

## III.  DISCUSSION

### A. Categories (a) and (b) – Disciplinary Histories and Performance Evaluations

With respect to the disciplinary records sought, Plaintiff argues that he "needs these documents to show and prove misdeeds and or negligence similar or that coincides with his complaints so that he can make and argue the facts at trial."  (Doc. 59 at 1).  As to the performance evaluations, Plaintiff argues that he "need[s] the evaluations to show that their performances were below medical accepted standards."  (*Id*.).

Defendant argues that performance evaluations and disciplinary histories are "private, sensitive materials of non-parties that have no bearing on the issues in this case."  (Doc. 58 at 1).  Defendant further adds that, as set forth in its October 17, 2024 letter, the BOP's search for Human Resources records revealed no disciplinary history for the relevant individuals.  (*Id*.).

Given that Defendant has represented that no disciplinary records exist for the identified individuals, we cannot compel Defendant to produce records that do not exist.  *See Wells*, No. 2014 WL 5641305, at

*4.  Thus, we consider only whether Plaintiff is entitled to the requested performance reviews.

Courts recognize that "[p]ersonnel files are confidential and discovery should be limited."  *Miles v. Boeing Co.*, 154 F.R.D. 112, 115 (E.D. Pa. 1994); *see also Bracey v. Price*, No. 09-1662, 2012 WL 849865, *2 (W.D. Pa. Mar. 13, 2012) ("[p]ersonnel files often contain sensitive personal information . . .  and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly") (quoting *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008).  While personnel files are not "categorically out-of-bounds," courts must weigh the right to the relevant discovery against the privacy interest of non-parties.  *Harris v. Harley-Davidson Motor Co. Operations, Inc.*, No. 1:09-cv-1449, 2010 WL 4683776, *5 (M.D. Pa. Nov. 10, 2010) (citing *Reagan-Touhy*, 526 F.3d at 648).

In *Shorter v. Samuels*, No. 3:16-cv-1973, 2021 WL 1017375, *34 (M.D. Pa. Mar. 17, 2021), the Court held that employees' performance evaluations were relevant and discoverable.  The Court noted, "if an evaluation pertains to an employee's failure to carry out one of his or her duties, this would bear directly on the breach of duty element for

the negligence claim." *Id*. at *35. Likewise, here a claim of ordinary negligence remains and the performance reviews of the identified individuals "could bear on, or [] could reasonably lead to other matter that could bear on," an issue that may be in the case.[1] *See United States ex rel. Bergman v. Abbott Labs.*, No. 09-4264, 2016 WL 4247429, at *2. Defendant has not demonstrated that the performance reviews do not fall within the scope of discovery contemplated by Rule 26(b)(1) or that they are not sufficiently relevant to justify the burden of production. *See Atkinson*, 414 F. Supp. 3d at 744. Accordingly, Defendant will be required to produce the performance reviews. However, after reviewing the performance reviews *in camera*, we are mindful of the fact that they contain significant additional information

---

[1] We note that Plaintiff has indicated that the performance reviews are necessary to show that the individuals' "performance were below medical accepted standard." (Doc. 59 at 1). In a medical malpractice claim, a plaintiff is "required to present an expert witness who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated form good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." *Laskowski v. U.S. Dept. of Veterans Affairs*, 918 F. Supp. 2d 301, 313 (M.D. Pa. 2013) (citing *Estate of Keating ex rel. Keating v. Coatesville VA Med. Ctr.*, 498 F. App'x 184 (3d Cir. 2012)). Thus, Plaintiff may not rely upon performance reviews to demonstrate that any of the individuals' care deviated from the acceptable medical standard.

that goes beyond whether each individual satisfactorily performed his or her job, including information that is not relevant to the issues in the instant matter.  Therefore, Defendant will be given an opportunity to redact any and all sensitive, personal, and non-relevant information from the performance reviews prior to production.  To be clear, Plaintiff is entitled only to the information in the respective performance reviews that discloses whether each individual satisfactorily performed his or her duties.

### B. Category (c) – Logs

Regarding category (c), the logs, BOP counsel noted that, as set forth in its October 17, 2024 letter, Plaintiff was in general population housing during the identified dates.  (Doc. 58 at 2).  No rounds logs exist for general population housing, and so, no responsive documents exist.  (*Id.*).  We cannot compel Defendant to produce records that do not exist and so, Plaintiff's request as to Category C is denied.  *See Wells*, No. 2014 WL 5641305, at *4.

### C. Category (d) – Documents Related to Nurse Spiese's Separation

Finally, Plaintiff argues that he "need[s] these documents to show that Defendant Spiese's separation from employment from F.C.I.

13

Schuylkill was due to numerous complaints from prisoners [and] her continuous negligence."  (Doc. 59 at 2).

Defendant objects to production of documents regarding Nurse Spiese's separation as overly broad, unduly burdensome, irrelevant to resolving the disputed issues in the case, and a "vexatious invasion of personal privacy."  (Doc. 58 at 3).  Defendant added that Nurse Spiese was not "removed" or terminated.  (*Id*.).  Rather, she resigned.  (*Id*.).

Based upon our *in camera* review, there are no documents relating to Nurse Spiese's separation that "show that Defendant Spiese's separation form employment from F.C.I. Schuylkill was due to numerous complaints from prisoners [and] her continuous negligence." (Doc. 59 at 2).  Rather, the documents submitted for *in camera* review confirm Defendant's representation that Nurse Spiese resigned and therefore are not relevant for the purpose articulated by Plaintiff. Further, the human relations forms submitted for review contain significant personal information regarding Nurse Spiese, including salary information and personal identifiers.  Accordingly, Plaintiff's request as to this category of information will also be denied.

14

## IV.  CONCLUSION

For the reasons set forth herein, Plaintiff's request to compel documents will be granted in part and denied in part.  The request is granted only with respect to the performance reviews and denied in all other respects.  Defendant will be afforded time, however, as set forth in our accompanying order, to redact information other than whether the individuals were assessed to have satisfactorily performed their respective duties from the performance reviews.


**Date:** November 14, 2025                    **/s/ Leo A. Latella**
                                              Leo A. Latella
                                              United States Magistrate Judge

15